THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK H. WILMARTH, Appellant.

*Crime — admissibility of a time book kept by a street superintendent upon the trial of an indictment for altering the city payroll — statements showing a juror to be prejudiced.*

Where there is no evidence that a time book, containing the names of persons employed by a street superintendent, the time when employed and their wages per day, was made by the superintendent in the performance of his duties, or that it was made at the time the men were employed, or as to its correctness, it is improper, upon the trial of an indictment for forgery, of a person charged with having altered the city payroll, to receive the time book generally in evidence.

*Semble,* that the time book could properly be used to refresh the recollection of the superintendent when being examined as a witness.

What statements of a juror, showing a present opinion as to the guilt or innocence of an accused person, make it improper that he should sit in a criminal case, considered.

APPEAL by the defendant, Frank H. Wilmarth, from a judgment of the County Court of Fulton county in favor of the plaintiff, entered in the office of the clerk of the county of Fulton on the 6th day of September, 1897, convicting the defendant of the crime of grand larceny in the second degree and forgery in the third degree.

During the impaneling of the jury, one Hollenbeck being called as a juror, upon his examination as to his qualifications therefor, after having given his understanding as to the duties of a juror and as to the necessity of his giving the defendant the benefit of every reasonable doubt in the case (it appears that he had read something about the case), testified as follows : "What I read in regard to this matter purported to be the testimony taken before the committing magistrate.   Q. And in the reading of that did you form an opinion

in regard to the guilt or innocence of Mr. Wilmarth? A. I did. Q. Was that a decided and fixed opinion? A. Quite so. Q. And would it require evidence to remove this? A. It would. Q. And considerable, too? A. Considerable. · Q. You think that you are as unbiased and unprejudiced to sit in this case now as you would have been if you hadn't read that in the paper? A. I do not. Q. Do you feel that you are yourself as competent to go in there and try this case as if you had not read and formed an opinion? A. No, I don't think I would be; not quite; I don't think I would be a fair and unprejudiced man to try the case against Mr. Wilmarth, the way I feel now. Q. You understand that any impression you might have now in your mind, it would be your duty to lay it aside when you enter the jury box? A. Yes, sir, I understand that. Q. And would be willing, if you went into that jury box, to just listen to the evidence and determine it according to the evidence? A. Yes, sir. Q. And there is no doubt in your mind but what you could do it? A. No doubt as far as I know of now. Q. You have now a decided opinion as to the guilt or innocence of the defendant? A. Yes, quite so. Q. Unless there is something adduced to contradict or combat that opinion, it would remain with you and prejudice you, if sworn as a juror? A. It would. Q. And unless there was testimony here to contradict and combat that opinion, you would take it with you into the jury room when you retired to consider of your verdict? A. No, I don't think I would. Q. How would you rid yourself of it? A. Well, I don't know as I could rid myself of it entirely; but, as I say, after I heard the evidence I might think differently. Q. Suppose there was nothing in the testimony to make you think differently, would not your opinion then interfere in the consideration of your verdict? A. Yes, sir, it would. Q. And you have a decided prejudice for or against the defendant because of the opinion which you have? A. Yes, sir, I think that is it. The defendant's counsel thereupon insisted upon their challenge to the proposed juror for actual bias." Against the objection and exception of the defendant the district attorney then examined the witness further as follows: " Q. In spite of any prejudice or any opinion you might have, you would go into the box and decide the case upon the evidence that was given here and under the law as laid down by the court, would you not? A.

I would.    On further examination by defendant's counsel, he  said :
Q.  Do you mean to say that after listening to testimony for two or
three days here in this action, after having the decided opinion and
prejudice which you now have for or against the defendant, you
could retire to consider of your verdict and remember alone the
testimony here adduced and not be interfered with in any wise by
the testimony which you have read or by the opinion which you
have formed ?    A.  No, I don't think I could.    I think what I read
would have some effect upon me.    The defendant's counsel there-
upon insisted upon the challenge.    The court overruled it, the
defendant excepting, and the witness took a seat in the jury box.
The defendant did not challenge the juror peremptorily, and he
was one of the jury of twelve men who tried the case and rendered
the verdict.    Before the jury were sworn the defendant had
exhausted his peremptory challenges."

The jury found the defendant guilty, and from the judgment of
conviction the defendant appeals to this court.

Numerous other questions are raised upon this appeal besides
those relating to the qualifications of the juror Hollenbeck to serve,
and the facts in relation to some of them, so far as necessary, are
referred to in the opinion.

*Robert P. Anibal* and *Andrew J. Nellis,* for the appellant.

*William C. Mills, District Attorney,* and *H. V. Borst,* for the
respondent.

HERRICK, J.:

Every person accused of crime has a right to insist that the jury
by whom he is to be tried shall be composed of unprejudiced, fair
and impartial men.

While the trial court has facilities superior to those of the appel-
late court for determining whether the persons selected as jurors
are unprejudiced, fair and impartial — the appearance and demeanor
of a juror while under examination being great aids in forming a
judgment as to his honesty, sincerity and intelligence; and while
in an otherwise doubtful case we should abide by the determination
of the trial court as to the qualifications of a juror, yet when it
appears clear to us from the record that a prejudiced man, one who

is incapacitated from passing fairly upon the case, has been allowed to serve as a juror, then it is our duty to disregard the decision of the trial court, and give to the defendant the benefit of our convictions in the matter; otherwise, the right and duty to review devolved upon this court would be valueless.

In this case it seems to me perfectly clear that the juror Hollenbeck was not an unprejudiced juror, although he seems to have been an honest and candid man.

Without reviewing his examination, it is sufficient to say that he had a then present opinion as to the guilt or innocence of the defendant that it would take evidence to overcome; that he was prejudiced.

He himself testified that he did not think he would be a fair and unprejudiced man to try the case.

The juror was not brought within the meaning and spirit of the requirements of subdivision 2 of section 376 of the Code of Criminal Procedure, as to persons who have formed an opinion as to the guilt or innocence of an accused.

It is unnecessary to refer to precedents in passing upon this question; each case turns upon its own peculiar facts; the general rule is well known.

In this case it is perfectly apparent that, as to this juror at least, the defendant had imposed upon him the burden of proving his innocence of the crime charged against him, instead of having the burden imposed upon the People of proving his guilt.

The defendant's challenge to the juror should have been sustained.

The defendant also brings up the exceptions taken by him to the reception in evidence of certain pages of a time book kept by the superintendent of streets of the city of Gloversville.

The charge against the defendant is, that he altered a payroll of city laborers from $31 to $131, he being treasurer of the city and thereby obtaining $100 which he was charged with keeping.

It is the duty of the street superintendent of the city of Gloversville to make out and present to the common council payrolls, stating under oath the name of each person employed, the time he labored, his wages per day and the amount due him. (§ 9, tit. 3, chap. 55, Laws of 1890.)

It appears in evidence that the superintendent was in the habit of

keeping what he called a time book wherein he entered the names of the persons employed by him, the time when employed and their wages per day.

The prosecution offered two pages of this book in evidence; apparently the pages covered the same period of time as did the payroll in question.

The defendant objected to their reception in evidence as incompetent, irrelevant and immaterial, and that no proper foundation had been laid for its reception in evidence. There was no evidence that the time book was made by the witness in the performance of his duties, and there was no evidence that it was made at the time the men were employed, neither did he testify as to its correctness.

The prosecution upon this appeal stated that " On the trial it was treated as a memorandum of the witness, containing a large number of names, items of wages and hours labor, which the witness could could not recollect without the book, and it was intended by its introduction, not to be evidence in itself, but merely a statement of entries and items which the witness identified."

And again, that " This memorandum was not offered as showing any conclusions or as evidence of any facts stated therein."

No such position in reference to this time book appears to have been taken upon the trial by the People, but the same was offered and received generally in evidence, and so far as I can see, without any limitation or restriction, and not as a mere memorandum from and by which the witness refreshed his recollection.

The book, the proper foundation being laid therefor, could undoubtedly be used to refresh the recollection of the witness, as now contended for by the People, but its reception at the time and in the manner the record discloses, over the defendant's objection, was error.

For these reasons the judgment should be reversed, and a new trial granted.

All concurred.

Judgment of conviction reversed, and a new trial ordered.